UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.

GARY VELLETTO a/k/a "G"
Docket No.: 5:15-CR-248(GTS)
_____

SENTENCING MEMORANDUM

## I.   INTRODUCTION:

This Memorandum is respectfully offered to the Court on behalf of Defendant, Gary Velletto, who sentencing is currently scheduled for March 27, 2018.

Mr. Velletto accepted responsibility on September 13, 2016, to Counts One and Four of Indictment number 5:15-cr-248.  Count One charges him with conspiracy to Distribute Marijuana, in violation of Title 21 U.S.C. Section 841(b)(1)(B) and Section 846, involving one hundred or more kilograms of marijuana.  Count Four charges him with Concealment Money Laundering Conspiracy, in violation of 18 U.S.C. Section 1956(a)(1)(B)(i).  Mr. Velletto and the Government entered into a plea agreement on that same date.

Mr. Velletto's base offense level is 24 (U.S.S.G. Section 2D1.1( c )(8) with an additional 2 levels added for being convicted under 18 U.,S.C. Section 1956, U.S.S. G. Section 2S1.1(b)(2)(B).  He is entitled to a three-level decrease for his timely acceptance of responsibility.  Mr. Velletto's adjusted offense level would be 23, subject to a potential three-level adjustment for aggravating role.  U.S.S.G. Section 3B1.1(b).  The plea agreement reserves the right of both Mr. Velletto and the Government to address the aggravating role adjustment at sentencing.  However, because his criminal history includes two controlled substance offenses, including one that occurred nearly twenty years ago when he was 18 years of age and the other eleven years ago when he was 26, Mr. Velletto is considered a "career offender".  U.S.S.G. Section 4B1.1(a)(3).

The base level for a "career offender" convicted of Conspiracy to Distribute Marijuana, in violation 21 U.S.C. sections 846 and 841(b)(1)(B) which carries a maximum term of Life is 37.   U.S.S.G. Section 4B1.1(b)(1). The three-level reduction for timely acceptance of responsibility yields an adjusted offense level 34.   Moreover, although Mr. Velletto has six criminal history points, which would place him in a Criminal History Category ("CHC") III, the career offender statute increases his CHC to VI.   U.S.S.G. Section 4B1.1(b).

Consequently, Mr. Velletto's advisory sentencing range is not 57-71 months of incarceration, which it would otherwise be with an adjusted offense level of 23 in CHC III, or even the 78-97 months, if the three-level aggravated role adjustment is applied. Instead, as a career offender, Mr. Velletto's advisory range is 262-327 months.   The statutory minimum is 10 years.

We respectfully suggest that a career offender sentence would be "greater than necessary" to satisfy the factors of 18 U.S.C. Section 3553(a).   Instead, we ask the Court to impose upon Mr. Velletto a sentence of 57 months, which would equate to a guideline sentence for an adjusted offense level 23 and CHC III.   We recognize that the requested sentence would continue a large variance, but for the reasons below, we believe this is a principled request.

## II.   AGGRAVATING ROLE ADJUSTMENT U.S.S.G. Section 3B1.1(b):

In the plea agreement, the Government indicated its intent to argue the application of U.S.S.G. Section 3B1.1(b) which provides for a three-level increase to the offense level, if the Defendant was a manager or supervisor (but not an organizer of leader) and the criminal activity involved five or more participants or was otherwise extensive.

Applying the adjustment turns, first, on the size and scope of the criminal activity, "five or more participants or was otherwise extensive" and, second, on Mr. Velletto's particular role in that activity as "manager or supervisor".   The Government bears the burden of proving by a preponderance of the evidence that Mr. Velletto should receive an aggravating role adjustment.   Application Note 1 to Section 3B1.1 defines a "participant" as "a person who is criminally responsible for the commission of the offense…"   A person who is not criminally responsible for committing the offense is not

2

a participant.   Mr. Velletto acknowledges that Angelo Santalucia, Temiah Garrett and Marizela Muratovic would qualify as participants and, even counting himself, the number of participants would total four.

### III.   AN OVERVIEW OF SENTENCING POST-BOOKER:

Since 2005, District Courts have had wide discretion to impose non-guideline sentences which are reasonable.   *See*, **United States v. Booker,** 543 U.S.220, 226-227 (2005).   The guidelines "are not only not mandatory on sentencing courts; they are also not to be presumed reasonable."   **Nelson v. United States**, 555 U.S. 350, 352 (2009).   They are "effectively advisory" **Gall v United States**, 552 U.S. 38, 62 (2007) and are only "the starting point and the initial benchmark."   Id. at 49     The Supreme Court, in **Gall**, rejected any requirement for a Defendant to show "extraordinary circumstances" to justify a sentence below the guidelines as "not consistent with our remedial opinion in **Booker** in that it would impermissibly elevate the guidelines above the other factors set forth in 18 U.S.S. Section 3553(a).   Id. At 44-50.

As recently reminded by the Second Circuit in **United States v. Genao**, 869 F3d 136, 140 (2d Circ. 2017), a District Court must conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and the defense, quoting **United States v. Cavera**, 550 F3d 180, 189 (2d Circ. 2008).   The District Court has broad authority to downwardly vary a sentence based on (1) individualized circumstances (**See Gall,** 552 U.S. at 58) and (2) policy disagreements. (See **Kimbrough v. United States,** 552 U.S. 85, 109-11 [2007]).

In its decision in **Cavera**, the Second Circuit explained the District Court's authority to impose a downward variance based upon a policy of disagreement when a Defendant's criminal history is markedly less serious than other offenses in the "wide spectrum of offenses (under U.S.S.G. Section 4B1.2) of varying level of seriousness, ffrom, on the one hand, murder or rape to, on the other hand, attempted burglary of a dwelling."   *See*, id at 192.

Another permissible police disagreement, albeit more general, is that the career offender guideline range is greater than necessary to meet the goals of sentencing.   *See* 18 U.S.C. Section 3553(a)(2);   *See*, e.g., **United States v. Newhouse**, 919 F.Supp. 2d

3

955, 967 (N.D. Iowa 2013). (detailing flaws in applicable career offender guideline). Sentences recommended by the career offender guidelines are among the most severe and least likely to promote sentencing purposes in the United States Sentencing Guidelines Manual.   U.S.S.C. *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* at 133-34 (2004).   One problem is that the guideline range is keyed to the statutory maximum, the result of a congressional directive to the United States Sentencing Commission.   Another problem, created by the Commission itself, is that the class of career offenders is defined much more broadly that the statute requires.

Of course, the overarching goal of sentencing is to ensure that a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.

Ultimately, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the Defendant.

(2) the need for the sentencing imposed to (A) reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendants as set forth in the guidelines;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense. 18 U.S.C. Section 3553(a)(1)-(7).

## IV.   THE NATURE AND CIRCUMSTNACES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT:

At the time of his sentencing, Gary Velletto will be 39years old.   His journey through life has not been easy and, at times, has been heartbreaking, but he would be the first to acknowledge that that is no excuse and he accepts responsibility for his conduct. (See Presentence Report at paragraph 35).

Gary Velletto was born in New Hartford, New York, to Gary and Thalia Velletto, who divorced when he was three years old.   Gary and his four-year-old sister, Carin, were shuffled between family members over the next several years.   Gary reports in the PSI that both he and his sister were sexually abused.   Gary recalls moving quite often and also having to change schools.   He received little emotional support or guidance from his mother and notes his stepfather was abusive.   Gary eventually moved in with his father, a warehouse worker with a history of drug abuse.   There were many times when Gary was left with his sister while his father worked the night shift.   When Gary was 11, his father went out on disability and the only source of family support was disability benefits.

When Gary was 12 years old, a 21-year-old man from the Bronx, Angel Guzman, moved into the downstairs apartment.   He pressured Gary into smoking cigarettes, trying marijuana and drinking beer.   Guzman began a sexual relationship with Gary's sister and used her to hold his drugs.   He used Gary to make drug deliveries in the neighborhood. He recalls several times that Guzman would beat and choke him if he was unavailable to make deliveries.   When Gary was 13 years old, Guzman introduced him to cocaine and paid Gary with cocaine to deliver drugs for him.   Gary's father's drug addiction blinded him to what was occurring in his own house.   Gary stopped going to school and did not complete any level of formal education beyond the 7th grade.   When Gary was 15, Guzman went to prison for robbery.

At the age of 17, Gary was convicted to misdemeanor menacing and sentenced to one year in the county jail.   Upon his release, he returned home to find his sister had a new boyfriend, 26-year-old Robert Roper, a cocaine dealer from New York City.   Gary was subsequently charged in a cocaine conspiracy case with Roper and others.   At the age of 18, with his girlfriend expecting their child, Gary was sentenced to a two-to-six

5

year term with SHOCK eligibility. He admits that during his incarceration, he accumulated numerous disciplinary infractions, refused substance abuse treatment and violated parole several times. However, in 2000, Gary earned his High School Equivalency Diploma.

Upon his release, Gary and his family opened a pizzeria, a venture that was not successful. He and his girlfriend had another child, a daughter. In 2005, Gary opened a jewelry and pawn shop business in Utica, known as "Central New York Gold Exchange."

In 2006, at the age of 26, Gary was arrested for selling relatively small amounts of cocaine ($300.00 and $350.00) to a confidential informant and was sentenced to a 3.5 year term of incarceration. He maintains that, at the time, he was not actively selling cocaine, but admits he was a user. At the request of a friend, he made the call and the subsequent transaction. The friend ended up being a confidential informant working to lessen his own sentence. Gary relates that he successfully completed substance abuse treatment while incarcerated, had a clean disciplinary record and was housed in a minimum security facility and had outside work clearance. He reports in his PSI that he has not used narcotics since 2006. During his incarceration, Gary's father was diagnosed with cancer. Gary's father reportedly turned his life around, quit smoking, drinking and drugs. His father decided that there was nothing more important than family and became a primary figure in the lives of Gary's children. When Gary was paroled in 2009, he was working to reestablish his jewelry and pawn shop business, but was having difficulty, as property taxes were now in arrears and a foreclosure was looming. To make matters worse, in 2010 the store was robbed at gunpoint and a large assortment of jewelry, watches and other consigned valuables were taken.

Gary lived with and cared for his father as he battled cancer. During this time, he transported his father to and from medical appointments, radiation and chemotherapy treatments, including weekly trips to the Slone-Kettering Cancer Center in New York City. Gary paid all expenses for both himself and his dad. Gary's father passed away in 2014.

Gary admits the factual allegations in the plea agreement and that he sold

marijuana from 2011 until be stopped in 2014 when he walked away from all criminal activity.   While not intending to minimize his role, he maintains that his involvement relates to the Utica aspect of the marijuana distribution and he was not part of other conspiracies, including the growing, operating and distribution to other locations which continued after he left the conspiracy.   He further submits that the monetary transactions related to his part in the conspiracy are approximately $300,000.00 of the $1.2 million money laundering and is subject to a downhill departure.

Gary sincerely regrets the position that he placed his family in, and, in particular, the burden his has placed upon his teen-aged children who will now be without their father for a significant period of time.   He vows to learn from this experience and to return home to be the father his children justly deserve.

### V.   THE CAREER OFFENDERGUIDELINE'S CATASTROPHIC EFFECT UPON MR. VELLETTO'S SENTECING GUIDELINES RANGE:

The instance offenses are no doubt serious, and a sufficient sentence must be imposed to satisfy 18 U.S.C. Section 3553(a)(2).   This is particularly important given the Gall Court's mandate for individualized sentencing and Section 3553(a)'s parsimony provision, which requires the sentence to be "sufficient *but not greater than necessary*", to comply with the purposes….of sentencing set forth in Section 3553(a)(2).   S18 U.S.C. Section 3553(a) (emphasis added).   Accord **_Kimbrough v. United States_**, 552 U.S. 85 101 (2007) (referring to the parsimony provision as the "overarching" instruction). However, the disparity in Mr. Velletto's advisory sentencing range dur solely to the career offender guideline, catapults him to an advisory guideline range of 2620327 months.

Although it is without a doubt that all crime, including Mr. Velletto's prior controlled substance offenses are serious, and are not to be condoned, it is recognized that there are "varying levels of seriousness" .   A nearly 20-year-old controlled substance offense imposed upon a then-18-year-old kid which resulted in a SHOCK-eligible sentence should not be considered as serious as a crime of rape or murder.   **_Cavera,_** 550 F3d 180 at 192.

As noted in **_United States v. Hernandez_**, 04 CR 424-20 (RWS) 2005 WL

1423276 at 7 (SDNY 2005) "the Sentencing Commission intended that the sentencing court carry discretion in determining the appropriateness of categorizing a defendant as a career offender, an intention echoed by the Second Circuit, and expected that the sentencing court would reduce a defendant's range of punishment if the career offender designation were misplaced."   In this case, sentencing Mr. Velletto as a career offender would be misplaced and greater than necessary, to comply with the purposes… of sentencing as set forth in Section 3553(a)(2).

As recognized in *United States v. Kennedy*, 554 F3d 415, 423 (3d Circ., 2009) "Sentencing is not a mathematical calculation; it is a human enterprise that requires wisdom, judgment and old-fashioned common sense.   To the extent the plain language of the Guidelines…would lead to unfair results, we repose our confidence in district judges to apply fairly and justly the factors set forth in 18 U.S.C. Section 3553(a) which may require variances from the Guidelines range."

Applying this reasoning to Mr. Velletto, the Court should impose a sentence below the guidelines.

### VI.   ACTIVITIES SINCE INCARCERATION:

Since his incarceration, Gary Velletto has taken an active role in his rehabilitation. He has voluntarily attended both AA and NA meetings and has reaffirmed his religious faith.   He has also enrolled in a paralegal certification course through Adams State University.   He has a strong support system in pace, and vows to learn from his mistakes and to return to his family to live a law-abiding life.

Gary Velletto has further indicated his desire to participate in the Federal Bureau of Prison's Residential Drug Abuse Program (RDAP) and has requested that we seek a judicial recommendation as part of his sentence.

### V.  CONCLUSION:

It is respectfully submitted, with all due respect to this Court, that it would be a travesty to sentence Mr. Velletto as a "career offender" in this case.   The Federal Criminal Justice System still recognizes marijuana as an illegal substance; however, this Court certainly is aware of the various states which have actually legalized the sale and

recreational or medicinal use of marijuana.   It would be a true injustice and a travesty if Mr. Velletto were sentenced as a career offender.   All of his prior convictions, for the most part, involved drug use and/or possession.   His history is one of physical, mental and drug abuse.   Defense counsel implores this Court to disregard the calculation or recommendation of the United States Probation Department regarding the classification of Mr. Velletto as a "career offender".

This would place Mr. Velletto in a criminal history category 26 if the Court concludes that he is to receive the three-level enhancement for his role in the conspiracy, or 23 if the Court rejects this theory.   The United States Government has requested this Court to sentence the Defendant in the lower guidelines range.   The guideline range for a level 23 would be 57-71 months, and for 26, would be 78-97 months.   It is respectfully requested that Mr. Velletto be sentenced at a base offense level of 23, with a sentence of 57 months.

Respectfully submitted:

*Anthony J. LaFache*

ANTHONY J. LA FACHE
Attorney for Defendant-Gary Velletto
Office and Post Office Address:-
288 Genesee Street - Suite #2
Utica, New York     13502
Phone (315) 793-8800
Fax (315) 793-0064
e-mail alafache@yahoo.com
Federal Bar Roll #102,002

*David A. Longeretta*

DAVID A. LONGERETTA, of counsel
Office and Post Office Address:-
298 Genesee Street
Utica, New York      13502
Phone (315) 735-0905
email dlongerettalaw@gmail.com
Federal Bar Roll #507,602

9